UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**MONTY KIM TURNER**
    Petitioner

v.                                                           No. 5:08CV-00127-R

**JOSEPH MEKO, Warden**
    Respondent

**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

The petitioner, an inmate of the Little Sandy Correctional Complex in Sandy Hook, Kentucky, has filed a pro-se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket Entry No. 1). The respondent has filed a motion for summary judgment, to which the petitioner has responded in opposition (Docket Entry Nos. 10 and 12). This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

**Background Facts and Procedural History**

Following a jury trial in the McCracken Circuit Court, the petitioner was convicted of unlawful possession of a methamphetamine precursor, complicity to possession of anhydrous ammonia in an unapproved container with intent to manufacture methamphetamine, use/possession of drug paraphernalia, second or subsequent offense, and being a persistent felony offender in the first degree. For these crimes, the petitioner was sentenced to a total of twenty-five years imprisonment. The background facts were summarized by the Supreme Court of Kentucky in its decision affirming the convictions, to-wit:

> On November 4, 2003, McCracken County Sheriff's Deputy Sgt. John Parks responded to a complaint of suspicious activity at [the petitioner's] residence. When Sgt. Parks arrived at the residence, he observed three men [i.e., the petitioner, York, and Burgess] carrying duffle bags. The three men looked toward the officer when he shined his spotlight on them. A few seconds later, two of the men ran away in opposite directions. Sgt. Parks later identified [the petitioner] as one of the men who ran away. Michael Burgess, the only man who did not flee, also identified [the petitioner] as one of the individuals who was with him at the scene that night.
>
> When deputies arrived at [the petitioner's] residence, three vehicles were parked in the driveway. Pursuant to a search warrant encompassing the residence, the vehicles, and the grounds, police recovered equipment and ingredients for manufacturing methamphetamine .... Police also found paraphernalia used to smoke both methamphetamine and marijuana [and] a Lorcen .380 semiautomatic pistol ....
>
> Three weeks later, [the petitioner] and York were arrested at another location. On the day of trial, Michael Burgess [testified] that on the evening of November 3, 2003, he met [the petitioner] and York at [the petitioner's] residence. The trio went to Wal-Mart around 11:00 p.m. that evening and then returned to the residence. Just prior to Sgt. Parks' arrival in the early morning hours of November 4, 2003, the men were coming out of the residence and [the petitioner] was carrying a duffel bag. When Sgt. Parks shined his flashlight on them, [the petitioner] and York ran in opposite directions. ...

*Turner v. Commonwealth*, 2006 WL 1045411.

The petitioner filed a motion for collateral relief pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42, alleging ineffective assistance of counsel. The trial court denied the motion. The Kentucky Court of Appeals affirmed. *Turner v. Commonwealth*, 2008 WL 2152264. The petitioner did not seek discretionary review by the Kentucky Supreme Court. The present petition was timely filed.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court shall not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that (1) was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).  The petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings were correct. See 28 U.S.C. § 2254(e)(1) and *McAdoo v. Elo*, 365 F.3d 487, 493-494 (6th Cir., 2004).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case. Id. In analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision.  Id.  The court may look to lower courts of appeals' decisions, not as binding precedent, but rather to conduct the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court. *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir., 2003).

## Discussion

The petitioner asks this court to revisit seven claims of ineffective assistance of counsel that were previously considered and rejected by the state courts.  To establish that he was afforded ineffective assistance of counsel, the petitioner must prove "[1] that his counsel's performance was deficient and [2] that he was prejudiced by that deficiency."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

**Claim One**

The petitioner's first claim is "ineffective assistance of counsel arising from counsel's ... botching the alibi ... by placing the Petitioner's alibi on the wrong night" (Docket Entry No. 1, p. 6). At trial, York, York's girlfriend, and the petitioner's sister testified that York and the petitioner were not in Kentucky in the early morning hours of Tuesday, November 4, 2003, when Sgt. Parks shined his spotlight on three men. According to these witnesses, York and the petitioner were in Illinois at the residence of the petitioner's sister. The magistrate judge concludes that the foregoing testimony constituted the essence of the petitioner's alibi. However, the alibi testimony was contradicted by the testimony of Burgess and Sgt. Parks, both of whom identified the petitioner as one of the two men who ran away from Sgt. Parks. The jury apparently found the testimony of Burgess and Sgt. Parks to be more credible than the alibi testimony. The undersigned concludes that the petitioner has failed to identify any specific evidence that counsel could have presented to the jury which likely would have changed their basic credibility assessment. Hence, the petitioner has failed to demonstrate that any error on counsel's part was prejudicial as contemplated by the second prong of *Strickland*, supra.

The petitioner's sister testified that she did not recall the exact date the petitioner and York were at her residence in Illinois. However, according to the sister, it was the day before she watched a segment of Fugitive Files on television that mentioned her brother and York as being "wanted" by authorities. Captain Hayden subsequently testified that Fugitive Files aired on Thursday November 6, 2003, not Wednesday November 5, 2003, the implication being that the sister's testimony was not exculpatory. The petitioner argues that counsel "botched the alibi" because a proper investigation would have revealed that the sister, in fact, saw a snippet of the Noon News on

4

Wednesday November 5, 2003, mentioning her brother and York. The magistrate judge concludes that the argument is unpersuasive for the following reasons:

    1. The petitioner has failed to present any probative evidence that the Noon News on Wednesday November 5, 2003, in fact, mentioned him and York.

    2. In light of the jury's fundamental decision to credit the eye-witness testimony of Burgess and Sgt. Parks that the petitioner was one of the two men who fled from Sgt. Parks on the night in question, evidence pertaining to the dates and contents of television programs is peripheral and insignificant, at best, as said evidence does not contradict the eye-witness testimony. In other words, there is no logical incompatibility or inconsistency between Burgess and Sgt. Parks witnessing the petitioner and York flee in the early morning hours of Tuesday November 4, 2003, and mention of this or a similar event during the Noon News on Wednesday November 5, 2003.

    3. Even if the Noon News did, in fact, mention the petitioner and York on the date indicated by the petitioner's sister and even if counsel effectively presented testimony to that effect at trial, thereby bolstering the sister's alibi testimony as to the date, the petitioner has failed to show a reasonable probability that the jury would have credited the bolstered alibi testimony over the eye-witness testimony.

    4. The Kentucky Court of Appeals held that counsel was constitutionally effective because the evidence in question "did nothing to strengthen the weight of [the] sister's testimony and there was no decisive value or force to it." *Turner v. Commonwealth*, 2008 WL 2152264.

    5. The state court's determination of the petitioner's ineffectiveness claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

**Claim Two**

The petitioner's second claim is "ineffective assistance of counsel arising from counsel's failure to [1] investigate certain Wal-Mart receipts and items which would have shown the state's version of the case was mistaken, [2] [failure] to investigate the 911 emergency call which would have revealed exculpatory information, and [3] counsel ... actually supplied the key information, through his cross-examination of Michael Burgess, that would allow the state to argue that the Petitioner had actual possession of anhydrous ammonia" (Docket Entry No. 1, pp. 7-8). We shall consider each sub-claim in turn.

The petitioner states that he raised his first sub-claim in his RCr 11.42 motion. Although the Kentucky Court of Appeals did not address it in its written decision, a review of the petitioner's brief to the Kentucky Court of Appeals shows that the claim was articulated as follows (Docket Entry No. 9, Part 9, pp. A44-A45):

> Many of the items from the Wal-Mart purchases found on [the petitioner's] receipts were found in the trailer or in the duffel bags carried by Burgess and his confederates. The point here is, however, that three of the items purchased by [the petitioner] at Wal-Mart and allegedly taken to [the petitioner's] trailer [i.e., coffee grinder, pliers set, and C.D. case] were never found at [the petitioner's] trailer, in Burgess's truck or in the duffel bags. ... Sargent Parks testified that when he surprised the three men, the man he thought was [the petitioner] dropped everything *(emphasis by petitioner)* he was carrying and ran. ... Unfortunately, [the petitioner's] attorney failed to see the significance of this discrepancy.

The magistrate judge concludes that counsel was effective despite not raising the foregoing "discrepancy" because, as counsel perhaps realized, it was insignificant for the following reasons:

1. There are unnumerable explanations why the items were not in the inventory, none of which tend to exculpate the petitioner of the crimes of which he was convicted.

2. It was not essential to the prosecution's case that a coffee grinder, pliers set, and C.D. case were among the items retrieved and catalogued by police.

3. Contrary to the petitioner's argument, a fair interpretation of Stg. Parks testimony to the effect that the petitioner dropped "everything" and ran, did not include an inference that Sgt. Parks was somehow guaranteeing that these items were not on the petitioner's person.

The petitioner's second sub-claim also was articulated the petitioner's brief to the Kentucky Court of Appeals (Docket Entry No. 9, Part 9, pp. A45-A46). The petitioner focuses upon the fact that the 911 emergency call was made by a female, although counsel asked questions at trial that suggested that counsel was under the mistaken impression that the call had been made by a male. The magistrate judge has carefully examined the petitioner's characterization of the contents of the call and discerns nothing "exculpatory." The petitioner's argument is conclusory and lacks a factual basis.

The petitioner's third sub-claim is at p. A47 of his appellate brief, to-wit:

> [T]he best the state could do was place [the petitioner] at the scene [of the anhydrous ammonia tank]. When Burgess testified, on direct examination, he did not put anhydrous ammonia into [the petitioner's] hands and did not give any testimony indicating [the petitioner] was carrying the anhydrous tanks. In fact, none of the evidence presented by the state up to the testimony of Burgess put anhydrous into [the petitioner's] actual possession. ... Then counsel asked Burgess whether he had seen [the petitioner] hold or carry the tank.... Burgess's response to this ill advised question put anhydrous ammonia into [the petitioner's] hands for the jury.

The magistrate judge concludes that, at trial, there was a reasonable chance that Burgess would have answered the "ill advised" question differently. In other words, counsel made a strategic decision to question Burgess. Trial counsel's tactical decisions are particularly difficult to attack, and a defendant's challenge must overcome a presumption that the challenged action might be considered sound trial strategy. *Darden v. Wainwright*, 477 U.S. 168, 185-187 (1986). Counsel's performance

was not deficient as contemplated by the first prong of *Strickland*, supra. Furthermore, the petitioner appears to exaggerate the significance of Burgess's testimony because it is not necessary to physically have an item in one's hands to legally "possess" it.

### Claim Three

The petitioner's third claim is "ineffective assistance of counsel arising from counsel's failure to effectively impeach Michael Burgess" in light of the fact that Burgess testified that "he, Petitioner and York were together and did not separate during the evening," despite the fact that "a security tape at a Wal-Mart store would show that Burgess returned to the store alone" (Docket Entry No. 1, p. 9). The Kentucky Court of Appeals found that "the record shows that trial counsel sought to contradict Burgess's testimony on cross-examination and presented witnesses to establish an alibi for Turner that refuted Burgess's testimony. Thus we cannot conclude that Turner's counsel was ineffective in cross-examining Burgess." *Turner v. Commonwealth*, 2008 WL 2152264. The magistrate judge concludes that the state court's determination of the claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. There are unnumerable explanations why the Wal-Mart tape did not show three men together, none of which tend to exculpate the petitioner of the crimes of which he was convicted. It was not essential to the prosecution's case that the three men were physically present together in a Wal-Mart store.

### Claim Four

The petitioner fourth claim is "ineffective assistance of counsel arising from counsel's failure to seek suppression of the evidence improperly seized by the McCracken County Sheriff's Office" (Docket Entry No. 1, p. 11). The Kentucky Court of Appeals disposed of the claim as follows:

> Turner further contends that the evidence recovered from his residence should be suppressed because Sgt. Parks impermissibly invaded the curtilage of his property when he encountered the three men on November 4, 2003. However, Sgt. Parks testified that, upon arriving at the area where the suspicious activity was reported, he actually walked behind the trailer next door to Turner's home in order to observe what was going on. He approached them only when it became apparent the three men were going to leave. And when the men figured out he was a police officer, two of the men ran off. Based upon Sgt. Parks's testimony that he was not on Turner's property when he first observed Turner, the trial court was able to determine that Turner did not have a privacy interest in the adjoining property and Sgt. Parks had a right to be there. There is no evidentiary basis to support Turner's contention that his trial counsel was ineffective for failing to seek suppression of the evidence recovered.

*Turner v. Commonwealth*, 2008 WL 2152264. The magistrate judge concludes that the state court's determination of the petitioner's ineffectiveness claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

Alternatively, the petitioner's ineffectiveness claim is premised upon counsel's inaction in relation to the rule requiring exclusion of evidence obtained by authorities in violation of a defendant's Fourth Amendment rights. A state prisoner may not seek habeas relief in a 28 U.S.C. § 2254 proceeding on a claim of illegal search and seizure if he had a full and fair opportunity to raise the claim in the state courts and presentation of the claim was not thwarted by a failure of the state's corrective processes. *Stone v. Powell*, 428 U.S. 465, 494 - 495 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir., 2000). A full and fair opportunity exists where the state has provided, in the abstract, a mechanism by which to raise the claim. Id. at p. 952. Where the Fourth Amendment claim is carefully considered at trial or on appeal, there is no failure of the state court mechanism. Id. The magistrate judge concludes that the petitioner has failed to identify any basis for a conclusion that the state courts did not afford him and full and fair

opportunity to present his Fourth Amendment contentions. Therefore, the petitioner cannot obtain habeas relief based upon an alleged unconstitutional search and seizure that counsel failed to properly develop at the trial court level.

## Claim Five

The petitioner's fifth claim is "ineffective assistance of counsel resulting from counsel's failure to seek suppression of an eyewitness identification based on an improperly suggestive identification procedure" (Docket Entry No. 1, p. 12). The Kentucky Court of Appeals held that "the [Kentucky] Supreme Court found ... that the identification of Turner was reliable and properly admissible. [Therefore,] trial counsel was not ineffective in pursuing measures to suppress evidence that was properly admissible." *Turner v. Commonwealth*, 2008 WL 2152264. The Kentucky Supreme Court had previously held as follows:

> [The petitioner] argues that Sgt. Parks' in-court identification of Appellant should have been suppressed because Sgt. Parks initially identified [the petitioner] from a single mug shot. ... Upon review, we find ... the totality of the circumstances indicate that Sgt. Parks' in-court identification of [the petitioner] was reliable despite the presumed suggestiveness of the single mug shot photograph. ...
>
> Burgess identified the two men that fled upon being confronted by Sgt. Parks. Sgt. Parks examined photographs of both [the petitioner] and York shortly after Burgess' identification. Sgt. Parks testified that he was confident in his identification of [the petitioner] because he got a very good look as [the petitioner] was the first person upon whom he shined the flashlight. These facts and others convince us that admission of the in-court identification was reliable and did not require suppression.

*Turner v. Commonwealth*, 2006 WL 1045411. The magistrate judge concludes that the state court's determination of the petitioner's ineffectiveness claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

### Claim Six

The petitioner's sixth claim is that the "cumulative effect of trial counsel's errors combined to deprive Petitioner of effective assistance of counsel" (Docket Entry No. 1, p. 12). "[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir., 2006). Furthermore, there is no cumulative effect when no error of trial counsel was found.

### Claim Seven

The petitioner's seventh claim is "ineffective assistance of counsel arising from the systemic error of appointing petitioner attorney's working under a conflict of interest" (Docket Entry No. 1, p. 12). The petitioner alleges that he presented this claim to the Kentucky Supreme Court. However, this exact issue does not appear to have been addressed by the Kentucky Supreme Court in its written decision. The petitioner's appellate brief does not appear to be in the state court record herein. Therefore, in the interests of judicial economy and because it is without merit, the magistrate judge shall consider the claim <u>de novo</u>. The petitioner identifies the following facts in support of his claim (Docket Entry No. 1, p. 12):

> The petitioner was appointed two attorneys during the preliminary proceedings of this case who were either unable or unwilling to provide adequate services to Petitioner due to a conflict of interest. As a direct result of this situation, the Petitioner was deprived of counsel to protect him on pretrial procedural matters. Moreover, Petitioner disclosed his entire defense to said attorneys providing the state's key witness, Michael Burgess, an unfair advantage going into trial.

In his response in opposition to the pending motion for summary judgment, the petitioner focuses upon his inability to obtain pre-trial release as impeding his ability to communicate with his lawyer so as to present an effective defense (Docket Entry No. 12). The magistrate judge concludes that the argument is conclusory and lacks a factual basis. The petitioner gives no specifics as to how the inadequacies of pre-trial counsel or his pre-trial incarceration prejudiced trial counsel's efforts to the extent that he received a fundamentally unfair trial.

11

## RECOMMENDATION

The magistrate judge RECOMMENDS that respondent's motion for summary judgment (Docket Entry No. 10) be GRANTED and that the petition pursuant to 28 U.S.C. § 2254 be DENIED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).